IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| ZACHARY TOBBINS WILLIAMS, ) | Civil Action No. 3:12-1422-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| CAROLYN W. COLVIN, ACTING ) | |
| COMMISSIONER OF SOCIAL SECURITY,[1] ) | |
| ) | |
| Defendant. ) | |
| ) | |

By Order of Reference (ECF No. 13) from the Honorable Terry L. Wooten, Chief United States District Judge, pursuant to 28 U.S.C. § 636, Local Civil Rule 73.02(B) DSC, and the consent of the parties, the case is before the undersigned Magistrate Judge for a final order. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision

of the Commissioner of Social Security (the "Commissioner") denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

## **ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed applications for DIB and SSI on May 7, 2009, alleging disability since April 9, 2009. Tr. 148-157, 171. Plaintiff's claims were denied initially and upon reconsideration. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on August 8, 2011 at which Plaintiff appeared and testified. Tr. 28-69. The ALJ issued a decision on August

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as Defendant in this action.



17, 2011, finding at step five of the sequential evaluation process[2] that Plaintiff was not disabled because work exists in the national economy which Plaintiff can perform.

Plaintiff was forty-seven years old at the time of the ALJ's decision. He has a high school education and past work experience as an iron worker helper, delivery truck driver, waiter, appliance installer, banquet manager, and industrial cleaner. Tr. 20, 172. Plaintiff alleges disability due to reflex sympathetic dystrophy ("RSD"), a neck injury, headaches, a kidney cyst, depression, and anxiety. Tr. 171.

The ALJ found (Tr. 12-20):

1. The claimant met the insured status requirements of the Social Security Act through September 30, 2010.

2. The claimant has not engaged in substantial gainful activity since April 10, 2009, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: lower back pain, neck pain, chronic pain syndrome, right wrist impairment, and left knee impairment (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) in that he can lift

---

[2]In evaluating whether a claimant is entitled to disability insurance benefits, the ALJ must follow the five-step sequential evaluation of disability set forth in the Social Security regulations. See 20 C.F.R. § 404.1520. The ALJ must consider whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to her past work, and (5) if not, whether the claimant retains the capacity to perform specific jobs that exist in significant numbers in the national economy. See id.

2



       and carry up to twenty pounds occasionally and ten pounds frequently; stand and/or walk for about six hours in a workday; and sit throughout the workday. He can occasionally stoop, crouch, and climb stairs or ramps, but never kneel, crawl, or climb ladders or scaffolds. He can do no more than occasional gross manipulation with the right hand and no use of foot pedals or other controls with the left lower extremity. Due to side effects from prescribed medications, he is further restricted to simple, routine tasks in a supervised environment, involving no required interaction with the public or team-type interaction with co-workers.

6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.     The claimant was born on August 12, 1964, and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963). He is now 47 years old.

8.     The claimant has a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from April 9, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

       The Appeals Council denied the request for review in a decision issued May 11, 2012 (Tr. 1-3), and the ALJ's decision became the final decision of the Commissioner. Plaintiff filed this action in the United States District Court on May 29, 2012.



**STANDARD OF REVIEW**

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971); Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a).

**MEDICAL EVIDENCE**

Plaintiff was diagnosed with a right wrist ligament tear on December 5, 2005. Tr. 402. On July 13, 2006, Plaintiff underwent right wrist arthroscopic surgery to repair the ligament. Tr. 407-409. X-rays of Plaintiff's neck and back taken on March 20, 2007, showed mild/early degenerative disc disease at C5-6 and C6-7, and mild disc space narrowing at L5-S1. Tr. 418, 420. An MRI performed on August 16, 2007, showed a probable small central tear of the annulus and minimal subligamentous disc herniation at L5-S1, similar in appearance to a previous study of December 8, 2004. Tr. 422.      On May 5, 2008, Plaintiff was examined by Dr. Richard Wendell, an emergency room physician, after a motor vehicle accident. On examination, Plaintiff had no joint deformity and his strength and sensation were intact in his arms and legs. X-rays of Plaintiff's neck were negative, and Plaintiff was discharged with pain medications for a cervical strain. Tr. 318-319.

Dr. Woodrow A. Bell examined Plaintiff on May 7, 2008, for complaints dealing with Plaintiff's neck, back, right hip, right hand, and both knees as a result of the earlier motor vehicle

4



accident. Dr. Bell noted Plaintiff had decreased cervical range of motion and right foot tenderness. He had no swelling in his right hand. Dr. Bell noted that Plaintiff had decreased right-hand grip strength, but otherwise had full muscle strength in all his extremities. He had normal gait and reflexes. Dr. Bell assessed cervicothoracic strain, lumbosacral strain, trapezius strain, and right foot and lower leg contusion. He prescribed medications and a TENS unit and referred Plaintiff for physical therapy. Tr. 337-338.

On May 28, 2008, Plaintiff complained to Dr. Bell that his hip was sore. Plaintiff reported that his neck and upper back felt much better since the initiation of physical therapy. On examination, Plaintiff moved all his extremities satisfactorily, and it was noted he had decreased strength in his right leg, but no swelling or edema and much less tenderness. Dr. Bell indicated Plaintiff's strains were improved and advised Plaintiff to decrease physical therapy to twice a week. Tr. 346. During a follow-up on June 9, 2008, Plaintiff requested to be released from Dr. Bell's care, stating he (Plaintiff) was doing better and felt he was back to his pre-accident level of functioning. Dr. Bell noted that Plaintiff's strains, contusions, and tendinitis had resolved; it was not anticipated there would be any long-term consequences as a result of Plaintiff's injuries; and Plaintiff was released to return to his normal activities and to work without restrictions. Tr. 348, 350. Plaintiff returned to Dr. Bell on August 11, 2008, with complaints of headaches and lower neck pain. Tr. 351. A CT scan of Plaintiff's head showed no acute intracranial abnormality. Tr. 438.

On September 20, 2008, Dr. Green Neal of Richland Community Healthcare Association, noted that Plaintiff needed some Lyrica, but that it made him "sleepy." Tr. 455. Plaintiff saw Dr. Jody Ellison of Richland Community Healthcare Association, on October 6, 2008. She provided Plaintiff with pain medications for his complaints of chronic back and hand pain. Plaintiff also reported

5



headaches and insomnia, and requested a referral to an eye doctor. Tr. 456. On examination, Plaintiff had decreased strength and range of motion in his right wrist. Dr. Ellison assessed musculoskeletal pain and advised Plaintiff to follow up in a month. Tr. 456-457.

Medical notes from Dr. Neal dated October 24, 2008, state that Plaintiff's examination was unchanged and Plaintiff was totally disabled. Tr. 458. On that same day, Dr. Neal completed a medical source statement form on behalf of Plaintiff in which he opined that Plaintiff could lift and carry less than five pounds with his right hand, and no more than twenty pounds total; stand and walk thirty minutes at a time and two hours total in an eight-hour workday; sit forty-five minutes at a time and no more than five hours in an eight-hour workday; never climb, crouch, kneel, or crawl; occasionally balance and stoop; and had limitations in his ability to reach, handle, feel, push, pull, and work around hazards and temperature extremes. Tr. 352-354.

On October 27, 2008, Plaintiff presented to Dr. Ellison asking for stronger medications for pain. Plaintiff reported that Lyrica and Lortab helped with pain, but made him drowsy. Dr. Ellison continued Plaintiff's prescriptions for Lyrica and Lortab. Tr. 459.

On December 2, 2008, Dr. R. Joseph Healy (a neurologist), stated he had been treating Plaintiff for cervical strain and cervicogenic headache since September 24, 2008. He noted that Plaintiff also had symptoms consistent with right carpal tunnel syndrome. Dr. Healy stated that Plaintiff had better range of neck motion and less tenderness. Dr. Healy thought Plaintiff had reached maximum medical improvement and had a five percent whole person impairment to his cervical spine as a result of the car accident. Tr. 357.

Dr. Ellison saw Plaintiff on January 26, 2009, and it was noted Plaintiff continued to complain of pain in his neck, back, and legs. Tr. 464. She noted that Plaintiff moved easily from the



chair to the examination table. Plaintiff had tenderness to minimal touch in his cervical, thoracic, and lumbar spines. Dr. Ellison assessed musculoskeletal pain, insomnia, and depression. Tr. 464-465. Plaintiff reported to Dr. Neal that Lyrica was helping somewhat with the pain in his neck on March 13, 2009. Tr. 466. On March 18, 2009, Dr. Ellison noted that Plaintiff had a splint on his right wrist and assessed that Plaintiff had muscle spasms, slightly improved insomnia, and depression. Tr. 467-468. Plaintiff went to the emergency room on March 30, 2009, complaining of back pain after he sneezed hard and it felt like something popped in his back. Plaintiff said he was able to walk well and was not having any weakness in his legs. Plaintiff denied any other issues at that time. Tr. 440.

On April 2, 2009, Plaintiff saw Dr. Ellison and told him that he had received a shot in the emergency room and was told he had a strain. Dr. Ellison noted Plaintiff was ambulating slowly and with difficulty. She increased Plaintiff's pain medications. Tr. 469-470. Treatment notes from Dr. Neal dated May 8, 2009, indicate Plaintiff was continued on pain medications and referred to a social worker. Tr. 473.

On May 19, 2009, Plaintiff went to the emergency room complaining of pain shooting down his legs for the past several days. Plaintiff had positive straight leg raising tests, and it was noted he had a component of sciatica. It was noted that an MRI from April showed mild disc protrusion with no nerve impingement. Plaintiff was provided with a prescription for a few days dosage of Vicodin. Tr. 442-443, see Tr. 441.

Plaintiff had a cervical MRI because of neck pain and limited range of motion on July 22, 2009. The MRI showed a small right paramedian disc protrusion at C6-7. Tr. 449.

On August 21, 2009, Dr. Todd Kolb, a state agency physician, reviewed Plaintiff's medical record and opined that Plaintiff retained the ability to lift and carry twenty pounds occasionally and



ten pounds frequently; stand and/or walk about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; occasionally climb, balance, stoop, kneel, crouch, and crawl; frequently reach with his right hand; and work while avoiding concentrated exposure to extreme cold. Tr. 484- 490.

On September 9, 2009, Plaintiff was examined by Dr. Douglas R. Ritz, a psychologist. Plaintiff described symptoms of depression secondary to physical problems that he said prevented him from working. Examination revealed that Plaintiff's affect was flat; he was alert, logical and coherent; he had good insight and fair judgment; his remote memory was good, and he showed some limitations of short-term memory. Dr. Ritz diagnosed mild major depressive disorder and personality disorder (with narcissistic traits) not otherwise specified. He opined that Plaintiff remained able to perform work activity and that work would be beneficial for Plaintiff's depression. Tr. 491-493.

Dr. Ellison continued Plaintiff's current medications on September 17, 2009. Tr. 518-519. Plaintiff reported to Dr. Ellison on October 23, 2009 that his pain medications helped some. Dr. Ellison noted Plaintiff had a splint on his right wrist. Tr. 520-521. On December 2, 2009, Plaintiff sought mental health treatment for anxiety and depression at his primary care clinic. Samples of Lexapro and Klonopin, for diagnoses of major depression and insomnia, were given. Tr. 534, 536-537. On December 3, 2009, Dr. Ellison continued Plaintiff's pain medications and noted his insomnia was stable. Tr. 522-523.

Dr. Mitchell H. Hegquist examined Plaintiff at the request of the Commissioner on March 3, 2010. Plaintiff reported problems with his knees, back, and wrist since a work-related accident five or six years earlier. He had an injection in his back with no improvement. Plaintiff reported that after his wrist surgery he could not hold anything and that Dr. Neal told him it was "probably RSD or



something." Plaintiff indicated he took Lyrica and Lortab. Plaintiff reported he also had problems with his neck since the car accident in May 2008. On examination, Plaintiff had tenderness to palpation in his right wrist and it was noted that he otherwise had no tenderness, swelling, deformity, or instability and had good range of motion and strength in his other joints. Plaintiff had no muscle spasm or atrophy. He had normal grip strength on the left and 4/5 grip strength on the right secondary to complaints of pain. Plaintiff could perform fine and gross manipulations with his hands. He had no obvious motor or sensory deficits, equal deep tendon reflexes, and a normal gait. Plaintiff performed all spine range of motion testing slowly and complained of tenderness to palpation with light touch of the skin overlying all of the lumbosacral spinous processes and lumbar paraspinal musculature. Straight leg lifting tests on both sides resulted in complaints of increasing low back pain and posterior neck pain. Dr. Hegquist assessed complaints of chronic neck, low back, and right wrist pain. Tr. 526-529.

On March 18, 2010, Dr. Elva Stinson, another state agency physician, reviewed the medical record and opined that Plaintiff retained the ability to lift and carry fifty pounds occasionally and twenty-five pounds frequently; stand and/or walk about six hours in an eight-hour workday; sit about eight hours in an eight hour workday; occasionally climb stoop, crouch, and crawl; and frequently balance and kneel. Tr. 558-565.

At the emergency room on April 15, 2010, Plaintiff complained of increased back pain after he bent over to pick up something off the floor. On examination, Plaintiff had tenderness to palpation along the lateral aspects of his neck with no medial neck tenderness and tenderness to palpation of the paraspinal processes of the lumbar region. He had negative straight leg raising tests, no focal



neurological deficits, and a normal gait. Plaintiff was administered morphine and discharged to home with pain medication. Tr. 566-567.

Plaintiff returned in March 2010 for renewal of his medications for anxiety and depression. Tr. 535. He returned to the psychiatrist on August 4, 2010, reporting he was out of medications. His Klonopin was increased. Tr. 570.

On July 8, 2011, Dr. Ellison completed a medical source statement form in which she opined that Plaintiff could not lift or carry any amount of weight because of his right wrist and hand pain, chronic neck and back pain, shoulder pain, and hip and knee pain. Dr. Ellison also opined that Plaintiff could not do any prolonged standing, walking, or sitting; could never climb, balance, stoop, crouch, kneel, or crawl; and his neck, back, hand, and wrist pain would be exacerbated by reaching, handling, feeling, pushing, and pulling. Tr. 590-591. Dr. Ellison thought Plaintiff was restricted from working around heights, moving machinery, temperature extremes, and vibration, and that these limitations were disabling since 2005. She also opined that Plaintiff's medications caused drowsiness and impairment in concentration, attention, and coordination. Tr. 590-593.

Plaintiff presented to the emergency room on July 10, 2011, complaining of another exacerbation of his chronic back pain. On examination, Plaintiff had normal range of motion of his extremities and no motor or sensory deficits. Plaintiff received morphine and was discharged home. Tr. 594-599.

## HEARING TESTIMONY

At the hearing held on August 8, 2011, Plaintiff testified that he had multiple debilitating side effects from the medications he was taking including dizziness, nausea, swelling in his legs, dry mouth, constipation, fatigue, difficulty concentrating, and feeling disorderly. He said he experienced



these side effects for the last four to six years. Tr. 35-42, 55. Plaintiff said he had severe back pain and could stand for only about twenty minutes at a time. Tr. 52. He estimated he could sit for about fifteen to thirty minutes at a time and lift only about three to four pounds. Plaintiff also testified he had difficulty moving his neck. Tr. 53. He stated he had constant severe pain in his right hand as well as his left knee. Tr. 54. Plaintiff testified that he did no housework or yard work, and that he did not prepare meals. Plaintiff reported that he spent the afternoon sitting on the porch, taking a walk, and watching television, and he sometimes read a book in the evening. Tr. 58-59.

## **DISCUSSION**

Plaintiff alleges that the ALJ erred (1) in evaluating his pain, and (2) in evaluating the opinion of his treating physician, Dr. Ellison. The Commissioner contends that there is substantial evidence[3] to support he Commissioner's final decision that Plaintiff was not disabled within the meaning of the Social Security Act.

A.     <u>Treating Physician/Opinion Evidence</u>

Plaintiff alleges that the ALJ violated the treating physician rule by improperly evaluating the disability opinion of treating physician Dr. Ellison and failing to discuss what weight he assigned to this opinion. He argues that Dr. Ellison's opinion is supported by her treatment notes; her descriptions of why Plaintiff could not perform certain activities; her notation of Plaintiff's

---

[3]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

<u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984); <u>Laws v. Celebreeze</u>, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. <u>Cornett v. Califano</u>, 590 F.2d 91, 93 (4th Cir. 1978).

11



medication side effects; and the October 24, 2008 disability opinion of Dr Neal. She also argues that the brief references by the ALJ to the findings of Dr. Bell, Dr. Healy, and the consultative examiner are irrelevant because these treatments ended much earlier than Dr. Ellison's treatment did and they only saw Plaintiff briefly for specific purposes. Plaintiff also argues that even though the Agency opinions were more recent, the ALJ did not accord them controlling weight. The Commissioner admits that the ALJ failed to explicitly indicate the weight given to Dr. Ellison's opinion, but appears to argue that it is harmless error because remanding this action for a statement of the weight assigned to Dr. Ellison's opinion would serve no useful purpose as it is a technical error that would not affect the ultimate result. Additionally, the Commissioner appears to argue that the ALJ reasonably discounted Dr. Ellison's opinion because it was not supported by the objective findings contained in the record, including her own treatment notes, and is not supported by the objective findings of Drs. Hegquist, Brown, and Bell who all found relatively normal physical findings on examination.

In determining the weight to assign to medical opinions, the adjudicator must consider: (1) the relationship between the provider and the claimant, including its length, nature, and frequency; (2) the degree to which the source presents an explanation and relevant evidence to support the opinion, particularly medical signs and laboratory findings; (3) how consistent the medical opinion is with the record as a whole; (4) whether the source is a specialist and offers an opinion related to the area of specialty; and (5) any other factors that tend to support or contradict the opinion. See 20 C.F.R. §§ 404.1527 and 416.927. The ALJ is not, however, required to expressly apply each of these factors in deciding what weight to give a medical opinion and not every factor applies in every case. See Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007).



The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. §§ 404.1527 and 416.927; Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527. Social Security Ruling 96-2p provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p.

Here, the ALJ failed to articulate what weight he assigned to the opinion of Plaintiff's treating physician (Dr. Ellison) or any of the other opinion evidence. The ALJ must explicitly indicate the weight given to all the relevant evidence. Murphy v. Bowen, 810 F.2d 422, 437 (4th Cir. 1987). Further, an ALJ must give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p.

13



Although he appears to have discounted Dr. Ellison's opinion, it is unclear from the ALJ's decision what weight he assigned to it. The ALJ appears to have discounted the opinion of treating physician Dr. Neal (who also opined that Plaintiff was disabled), because the opinion was rendered approximately six months prior to Plaintiff's alleged onset date in April 2009, but inconsistently appears to have discounted Dr. Ellison's opinion in part based on the findings of Dr. Bell, who last treated Plaintiff approximately six months before the alleged onset date. The ALJ also appears to have discounted Dr. Ellison's opinion based on findings of the State agency consultants, but it is unclear the weight placed on their opinion evidence.

This action is remanded to the Commissioner to evaluate the opinion of Dr. Ellison, Plaintiff's treating physician, in light of all of the evidence and applicable law. On remand, the Commissioner should also consider Plaintiff's remaining allegations of error concerning the evaluation of opinion evidence in this case.

B.     Pain/Credibility

Plaintiff alleges that the ALJ erred in evaluating his pain by making confusing and contradictory findings regarding the side effects of his medications, failing to find his complaints of pain credible, and improperly interpreting his activities of daily living to discount his pain. The Commissioner contends that the ALJ reasonably evaluated Plaintiff's reports of medication side effects, subjective complaints, and daily activities.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir.

14



1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he or she suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ does not appear to have properly evaluated Plaintiff's credibility as he failed to fully consider the side effects of Plaintiff's medications. SSR 96–7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. SSR 96-7p; see also 20 C.F.R. § 404.1529(c)(3)(listing "other evidence" to be considered when "determining the extent to which [claimant's] symptoms limit [claimant's] capacity for work," including, "(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms[.]").

The ALJ noted Plaintiff's testimony about medication side effects including that Lexapro, Lortab, and Lyrica make him constipated; Lexapro and Lortab make him dizzy; Lexapro makes his legs swell; Lyrica and Lortab keep him from focusing and concentrating; Lyrica and Klonopin make him tired and sleepy; Klonopin makes him want to avoid people; and he has dry mouth resulting generally from his prescribed medications. Tr. 15. In discounting Plaintiff's credibility, the ALJ does not explain what if any of these side effects he found credible, but merely concluded it was unlikely



that Plaintiff's physicians would give the same medications without change for several years if they were ineffective and gave such side effects. The ALJ also stated that "the evidence does not show any effort at treatment of the side effects he alleged, which is clearly possible if other medications are not available for him." Tr. 19. It is unclear the basis for this statement. Although the ALJ may have reduced Plaintiff's residual functional capacity based on his medication side effects, it is unclear from the decision what side effect are credible and to what extent they reduced his RFC. Further, the ALJ does not appear to have acknowledged that Plaintiff's physicians noted medication side effects on a number of occasions. Plaintiff's physicians noted sleepiness as a medication side effect. Tr. 455, 459. Although not specifically noted as a side effect, there are numerous references to constipation in the medical notes. Tr. 464, 467, 469, 471, 474, 477, 479, 518, 520, 522-523, 524. Dr. Ellison identified side effects of drowsiness, concentration, and attention and coordination impairment as side effects of Plaintiff's medications. Tr. 593. Upon remand, the ALJ should evaluate Plaintiff's credibility based on all of the evidence, including the alleged side effects of his medications.

## **CONCLUSION**

The Commissioner's decision is not supported by substantial evidence. This action is remanded to the Commissioner to consider the opinion of Plaintiff's treating physician (Dr. Ellison) and other opinion evidence, and to evaluate Plaintiff's credibility (including the side effects of his medications), in light of all of the evidence and applicable law.

Based on the foregoing, the Commissioner's decision is **reversed** pursuant to sentence four



of 42 U.S.C. §§ 405(g) and 1383(c)(3) and the case is **remanded** to the Commissioner for further administrative action as set out above.

    **IT IS SO ORDERED.**

                                          Joseph R. McCrorey
                                          United States Magistrate Judge

July 2, 2013
Columbia, South Carolina